IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LASHUNDRA JACKSON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | **CASE NO. 2:07-cv-645-MEF** |
| STATE OF ALABAMA DEPARTMENT OF | ) | |
| TRANSPORTATION, JOE MCINNES, *etc.*, | ) | |
| | ) | |
|     Defendants. | ) | |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, the State of Alabama Department of Transportation (hereinafter "ALDOT") and Joe McInnes, and reply as follows to Plaintiff's Response (Doc. No. 23) in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 16):

### I. Statement of Facts

1. **Hiring and initial employment.**

New Engineering Assistants take a basic math and algebra test when they are hired, and many do not pass one or both of these tests. Plaintiff's Exhibit 10 reflects Engineering Assistants' initial math, algebra, and other test results, but does not reflect whether or not those employees subsequently took math, algebra, or other courses, or whether they passed the courses taken. (See Defendants' Second Supplemental Evidentiary Materials, filed contemporaneously herewith, Exhibit 26, which reflects subsequent math test results for Engineering Assistants.) For example, Plaintiff's Exhibit 10 at 5 reflects that Jackson took the Basic Math, Algebra, Geometry, and Trigonometry tests on July 3, 2007, (her date of employment) and failed to pass any of the tests. Defendants' Exhibit 26 at 3 reflects that Jackson took and passed the Basic Math test on October 10, 2006.

On or about September 22, 2003, as evidenced by the Ninth Division Staff Meeting minutes (see Second Supplemental Evidentiary Materials, Exhibit 27 at 3, ¶ 12), the policy of the Ninth Division was that new Engineering Assistants were required to attend and pass Basic Math and Algebra.  Failure to pass these two courses would result in the extension of the employee's probation for three (3) months.

Jackson was interviewed for employment by Joey Fresolone and Vera Milhouse, not Vince Calametti.  (See Second Supplemental Evidentiary Materials, Exhibit 28, "Interview Form.")  Bertha Alexander indicated that she had recently filed an internal complaint against ALDOT alleging race discrimination; however, she does not state that Calametti was the subject of her complaints.  Nor does she include any specifics of the grievance (*i.e.*, who she alleged had discriminated against her or when and how the discrimination occurred).  Alexander references a hearing that was conducted on her grievances by Hearing Officer Wes Romine but failed to attach the findings of this hearing to her affidavit.  Thus the outcome of the hearing, favorable or unfavorable to her, is not specified.

### 2.    Ms. Jackson's performance review.

Jackson contends that the reason for her probation being continued was not entered in the "Disciplinary Actions Area" of the review form signed by Paulk on December 20, 2006.  While it is correct that there is no entry on the form, the review form would have been accompanied by Paulk's recommendation that Jackson's probation be extended for three months because she had not attended and passed the Algebra course during her initial probationary period.  (See Second Supplemental Evidentiary Materials, Exhibit 29, December 19, 2006, memorandum to File by Bret Paulk.)

2

Jackson missed the Algebra class scheduled for October 2006 citing medical appointments. As pointed out in Defendants' initial brief (Doc No. 17), Jackson did not seek to reschedule her medical appointments in order to attend this Algebra class, which was mandated in order that she complete her probation. She opted to miss the class knowing that her probation would be extended if the class could not be rescheduled and passed within her probationary period. (See Doc No. 18-15, Exhibit 6.) As reflected in the e-mail correspondence (see Doc No. 18-16, Exhibit 7), Paulk had advised Jackson that failing to attend the Algebra class on October 30 through November 3, 2006, would result in probation extension. Jackson contends that Poiroux told her that "he saw no reason for her not to have made probation whether or not she attended the class." This is the same Poiroux who initiated the Division policy that new Engineering Assistants were required to take and pass the math requirements. In the January 2, 2007, memorandum from Jackson to Poiroux , referencing a December 22, 2006, conversation, Jackson states only that Poiroux said, "Sometimes they do that."

Jackson contends that a white female, Lisa Champagne, was given permanent status without having first passed the basic math and algebra courses. In support of this contention, Jackson submits the Math Placement Test Results, which merely reflects Champagne's initial test results. In actual fact, Champagne was hired by ALDOT on April 1, 2007, passed Basic Math on July 16, 2007, passed Algebra on August 20, 2007, and was not recommended for permanent status until September 21, 2007 (with an effective date of October 16, 2007). (See Second Supplemental Evidentiary Materials, Exhibit 30, March 21, 2007, letter to Lisa S. Champagne.) Jackson and Hunter's assertions regarding Champagne are simply wrong.

3.    **January 5, 2007**

In her deposition, Jackson states that the reason for the meeting with Paulk on the morning of January 5, 2007, was the ALDOT tape recording policy.  When asked whether there was any other reason for the meeting she stated, "No."  She further stated that she didn't actually have to meet with him (Paulk) to give him her doctor's note.  "I just handed that to him and that be it."  (See Doc No. 18-2, Jackson deposition at 159, line 13, through 160, line 13).  It is only now that Jackson contends that handing Paulk the doctor's note prompted the actions she attributes to him.

Plaintiff appears to contend that, because she ultimately signed the ALDOT tape recording policy by the end of the day on January 5, 2005, she should not have been reprimanded for insubordination.  However, it is clear that she refused to sign this policy, which all ALDOT employees were required to sign, when first told to do so by her supervisor.  Jackson admits that she was given time to read the policy, that she told Paulk that she did not agree with the policy, and that she explained to him why she did not agree with the policy (*Id.* at 160, line 20, through 163, line 16.)  Ultimately, Jackson left Paulk's office without having signed the policy and proceeded to another office.  During the course of the day, Jackson's excuses for not signing the policy changed from not understanding the policy to wanting to talk to her attorney about the policy to the policy being illegal to not wanting to sign it because Paulk had been unfair to her. During the course of the day, several members of ALDOT management staff and others were involved in convincing Jackson to sign the policy.

4

4.      **Ms. Jackson' termination**

a.      1.      **The January 29 complaint.**

Jackson contends that, on February 14, 2007, Investigator Sandra M. Dietz denied Jackson's grievance; her findings state that she spoke with Calametti, Palmer, and Paulk about the grievance.  Dietz's findings reflect that, "according to Calametti, Palmer, and Paulk, it is common for new, inexperienced EAs to be assigned to observe various job tasks being performed on different project sites, as part of the on-the-job training."  There is no evidence that Dietz specifically advised Calametti, Palmer, or Paulk that Jackson had filed a grievance, much less that Palmer and Paulk were the subject of her allegations.

2.      **The second doctor's note**.

Jackson contends that she gave Paulk a copy of the February 2007 doctor's note and that Paulk told her he had no inside work and that she would not move forward in her "condition."  Paulk denies the allegations.  (See Second Supplemental Evidentiary Materials, Exhibit 31, Deposition of Bret Paulk at 124, lines 1-13.)  However, it was not Paulk who determined to place Jackson on restricted duty.  Calametti, upon becoming aware of the second doctor's note on, to-wit, February 13, 2007, directed Palmer to assign Jackson to office duty.  Jackson reported to Tony Cooper on February 16, 2007.

As pointed out in Defendant's Memorandum Brief in Support of Summary Judgment (Doc. No. 17), Jackson had not complained that her pregnancy had interfered with her ability to perform her tasks.  In fact, she stated that she was able to perform all of her assignments irrespective of her pregnancy.  Jackson did not inform her doctor of the types of work she routinely performed nor of any difficulty she was experiencing due to her pregnancy.  Jackson did not request office duty.  (See Doc No. 18-2, Jackson deposition at 112, line 18, through 113,

line 5; 114, line 1, through 117, line 7, through 118, line 3.)  It is clear that Jackson suffered no

ill effect from any outside work she may have performed from the date Paulk allegedly received

the second doctor's note until the date she was placed on office duty.

Jackson has stated that another Engineering Assistant, Mary Weaver (white) was treated

differently than she on account of her pregnancy.  Jackson contends that Weaver was assigned to

inside duties when her pregnancy became known.  Defendants contend that Weaver, who is no

longer employed by ALDOT, was not reassigned to inside duty on account of her pregnancy;

however, assuming, *arguendo*, that Weaver was so assigned, her situation is not markedly

different than Jackson's.  Jackson was assigned to inside work under the supervision of Tony

Cooper by Calametti through Palmer.  And, while there may have been a short delay, assuming

Paulk was actually advised by Jackson of the second doctor's note, by her own admission,

Jackson suffered no ill effect from performing her duties in the interim.  Moreover, Weaver's

pregnancy resulted in the birth of a daughter on April 17, 2003, well prior to Paulk's

employment with ALDOT.  (See Second Supplemental Evidentiary Materials, Exhibit 32, State

Employee's Membership Status Change form, signed by Mary Weaver on April 17, 2003.)

      **b.**     **ALDOT's inconsistent justification for terminating Jackson**

At the time of her separation from service, Jackson was a probationary Engineering

Assistant whose initial six-month probationary period had been extended due to her failure to

complete the required math courses.  The letter that was sent to Jackson by State Transportation

Director Joe McInnis on March 6, 2007, reflected Jackson's probationary status and advised her

that her services were no longer required.  Defendants are not aware of any mandate that the

separation letter contain a detailed explanation for the separation.  Jackson has submitted nothing

to the contrary.

A review of the documents submitted by Poiroux from the Ninth Division, recommending that Jackson's employment be terminated, reflects the underlying reasons for the termination.  As noted in Palmer's recommendation of February 22, 2007, to Calametti, Jackson had been counseled for her outburst and threat on October 6, 2006, in connection with Josh McElhenney concerning the alleged damage to her car.  On November 2, 2006, Paulk had advised her regarding conducting herself in a professional manner during her mid-appraisal review, and on January 18, 2007, Jackson was reprimanded for disruptive and insubordinate behavior on January 5, 2007, (the tape recording policy matter).  In her response to Defendants' motion, Jackson contends that there is no connection between her termination and her behavior on January 5, 2007.  (See Doc No. 23 at 20.)

ALA. CODE § 36-26-21(a) (1975) provides that a person appointed to a position in the classified service shell be tested by a working test while occupying such position, for a period not less than six months.  During such time the appointee, or probationer, is observed as to their work performance, willingness and ability to perform his/her duties satisfactorily and as to his/her habits and dependability.  It was during this work test that Jackson was separated from service for her misconduct.  As previously noted, the end Jackson's initial probationary period or work test period, as extended, was approaching, and a decision was required whether to make Jackson a permanent employee or to separate her from service.  That Jackson had worked without incident from January 5, 2007, until the time of her termination did not negate the two serious incidents of misconduct (*i.e.*, the October 2006 incident which resulted in a counseling for disruptive and threatening behavior and the reprimand for insubordination resulting from the January 5, 2007 incident regarding the tape recording policy).  Defendants were entitled to consider these incidents, along with the annotation of counseling on the November 2, 2006, mid-

appraisal in making their decision to terminate Jackson's employment. Clearly, there was a connection between the January 5, 2007, incident, as well as the others, and the decision to terminate.

### Conclusion

Defendants contend that, by the brief and argument previously submitted and through this response, they have demonstrated that the termination of Jackson's employment with ALDOT was based upon legitimate, non-discriminatory reasons and that, as a matter of law, their motion for summary judgment (Doc No. 16) is due to be granted.

RESPECTFULLY SUBMITTED
TROY KING
ATTORNEY GENERAL

s/ Andrew W. Redd
Jim R. Ippolito, Jr. (IPP001)
Assistant Attorney General
Chief Counsel

Andrew W. Redd (RED001)
Jason A. Trippe (TRI012)
Assistant Attorneys General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone:  (334) 242-6350
Facsimile:  (334) 264-4359
redda@dot.state.al.us
trippej@dot.state.al.us

8

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **LASHUNDRA JACKSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) **CASE NO. 2:07-cv-645-MEF** |
| **STATE OF ALABAMA DEPARTMENT OF** | ) |
| **TRANSPORTATION, JOE MCINNES,** *etc.*, | ) |
| | ) |
| **Defendants.** | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that, on **June 24, 2008**, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECT system, which will send notification to the following:

Mr. Kell A. Simon, Esq.
Ross Melton, P.C.
1104 San Antonio Street
Austin, Texas 78701
ATTORNEY FOR PLAINTIFF


s/ Andrew W. Redd
Andrew W. Redd (RED001)
Assistant Attorney General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
(334) 242-6350 (office)
(334) 264-4359 (facsimile)
redda@dot.state.al.us